**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA D. GREENE, *et al.*, | ) | CASE NO. 1:24-cv-01890 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| -vs- | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| PROGRESSIVE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is the Motion to Dismiss filed by Defendant Progressive Corporation ("Progressive"). (R. 13). Plaintiffs Andrea D. Greene and James M. Vaughan allege they "are current and former employees who paid [a] tobacco surcharge and/or paid [a] vaccine surcharge to maintain health insurance coverage" under the Progressive Health Life And Disability Benefits Plan (the "Plan"). (R. 1, PageID# 2, ¶¶4-5). Plaintiffs allege five counts against Defendant: (1) unlawful imposition of a discriminatory tobacco surcharge in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1182; (2) unlawful imposition of a discriminatory vaccine surcharge in violation of ERISA, 29 U.S.C. § 1182; (3) failure to notify of a reasonable alternative standard for avoiding the tobacco surcharge in violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702; (4) failure to notify of a reasonable alternative standard for avoiding the vaccine surcharge in violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702; and, (5) breach of fiduciary duty in violation of ERISA, §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106. (R. 1).

Progressive has moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, as well as under Federal Rule of Civil Procedure (12)(b)(1) for

lack of subject-matter jurisdiction. (R. 13). The latter argument suggests Plaintiffs have not plausibly alleged an injury in fact and lack standing. (R. 13, PageID# 79-85).[1]  Plaintiffs have opposed said motion (R. 14), and Defendant has filed a reply supporting its motion. (R. 16).

For the following reasons, the Court GRANTS Defendant Progressive's Motion to Dismiss this case for failure to state a claim.

## I.    Background

### A.    Wellness Programs Under ERISA

Under ERISA, "[a] group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1).

Nevertheless, the very next subsection of ERISA clarifies that:

Nothing in paragraph (1) shall be construed--

***

(B) to prevent a group health plan, and a health insurance issuer offering group health insurance coverage, from establishing premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention.

29 U.S.C.A. § 1182(b)(2). Further, the Affordable Care Act ("ACA") amended ERISA, making certain provisions of the Public Health Service Act ("PHSA") applicable to wellness programs. *See*

---

[1]  Defendant's motion attaches "The Progressive Health Life And Disability Benefits Plan: Summary Plan Description" ("SPD") referenced in the Complaint. (R. 13-1).

29 U.S.C.A. § 1185d(a) ("the provisions of part A … of the Public Health Service Act (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart….") These programs are referred to in the statute as "wellness programs." 42 U.S.C. § 300gg-4(j). Furthermore, the absence of a surcharge is expressly contemplated as a possible "reward" under the statute. 42 U.S.C. § 300gg-4(j)(3)(A) ("**A reward may be in the form of** a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), the **absence of a surcharge**, or the value of a benefit that would otherwise not be provided under the plan.") (emphasis added).

> In 2013, the Department of Labor ("DOL") incorporated these requirements into its regulations for non-discriminatory wellness programs. Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33181–86 (June 3, 2013) (codified at 29 C.F.R. § 2590.702). In issuing these revised regulations, the DOL specified its intent that "every individual participating in [a wellness] program should be able to receive the full amount of any reward or incentive, regardless of any health factor." *Id*. at 33160.

> Under the applicable regulatory scheme, outcome-based wellness programs, such as tobacco cessation programs, must satisfy five conditions. First, participants must receive at least one opportunity per year to qualify for the reward. 29 C.F.R. § 2590.702(f)(4)(i). Second, the reward must not exceed a specified percentage of the "cost of employee-only coverage under the plan." *Id*. § 2590.702(f)(4)(ii); *see id*. § 2590.702(f)(5) (defining the relevant percentage for tobacco-reduction programs as fifty percent). Third, the program "must be reasonably designed to promote health or prevent disease." *Id*. § 2590.702(f)(4)(iii). This provision requires that a program have a "reasonable chance of improving the health of, or preventing disease in, participating individuals," not be "overly burdensome" and not act as "subterfuge for discriminating based on a health factor." *Id*.

> Fourth, "[t]he full reward ... must be available to all similarly situated individuals," requiring a "reasonable alternative standard ... for any individual who does not meet the initial standard." *Id*. § 2590.702(f)(4)(iv)(A). In determining whether a plan furnishes a reasonable alternative standard, "[a]ll the facts and circumstances are taken into account," including the time commitment and cost for program completion. *Id*. § 2590.702(f)(4)(iv)(C). The plan must also accommodate the recommendations of an individual's personal physician if that physician deems a plan standard "not

3

medically appropriate for that individual." *Id*. Lastly, the plan must "disclose in all plan materials describing the terms of an outcome-based wellness program ... the availability of a reasonable alternative standard." *Id*. § 2590.702(f)(4)(v). This disclosure must include "contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." *Id*. However, "[i]f plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required." *Id*. The regulations provide illustrative examples of programs that either satisfy or fail to meet these standards. *Id*. § 2590.702(f)(4)(vi).

*Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 888 (E.D. Va. 2025).

Here, it is the fourth and fifth conditions that appear to be primarily in dispute. The fourth condition requires that the "full reward" be available to all "similarly situated individuals," and that any individual who does not meet the initial standard for the reward must be given a "reasonable alternative standard" for obtaining said reward. 29 C.F.R. § 2590.702(f)(4)(iv). Plans are "not required to determine a particular reasonable alternative standard *in advance* of an individual's request for one … [but] a reasonable alternative standard must be furnished by the plan or issuer *upon the individual's request* or the condition for obtaining the reward must be waived." 29 C.F.R. § 2590.702(f)(4)(iv)(B). Nevertheless, the fifth condition requires *adequate notice* of the availability of the reasonable alternative standard:

> Notice of availability of reasonable alternative standard. The plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated. **If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required**. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(4)(v) (emphasis added). The DOL's "sample language" referenced in the above regulation provides the following example as adequate for satisfying the notice requirement:

4

> Sample language. The following language, or substantially similar language, can be used to satisfy the notice requirement of paragraphs (f)(3)(v) or (f)(4)(v) of this section: "Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status."

*Id.* § 2590.702(f)(6).

**B.**     **Fiduciary Duties Under ERISA**

ERISA states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)-(ii). Fiduciary status under ERISA "is not an all or nothing concept" and courts should ask whether a defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint[.]" *Tiara Yachts, Inc. v. Blue Cross Blue Shield of Michigan*, 138 F.4th 457, 463 (6th Cir. 2025) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). ERISA describes a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Specifically, 29 U.S.C. § 1106(a)(1) prohibits certain categories of transactions between the plan and a party in interest, while § 1106(b)(1) prohibits fiduciaries from "deal[ing] with the assets of the plan in his own interest or for his own account." Pursuant to 29 U.S.C. § 1132(a)(2), a participant in an ERISA plan is permitted to bring a civil action alleging liability for breach of a fiduciary duty under 29 U.S.C. § 1109 ("Liability for breach of fiduciary duty").

5

## C.    Factual Background

The basic facts of this case are not highly controverted. Plaintiff Vaughan was a former employee of Defendant Progressive while Plaintiff Greene remained an employee of Progressive, at least as of the time the Complaint was filed. (R. 1, PageID# 3, ¶¶7-8). Progressive sponsors the Plan, which includes a wellness program for Plan participants who are employees[2] of Progressive or one of its affiliates. (R. 1, ¶¶11, 17, 19; R. 13, PageID# 73). Under the wellness program, participants who are tobacco-free or receive the COVID-19 vaccine (during 2022 only) pay lower health insurance premiums. Tobacco-free participants pay $15 less per pay period for their health insurance than tobacco users and those who received the COVID vaccine paid $25 less per pay period in 2022. *Id*. Plaintiffs characterize these amounts as surcharges on tobacco users and those who opted against the vaccine. (R. 1, ¶¶18-19). The Complaint does not allege that Plaintiff Vaughan ever stopped smoking or completed an alternative wellness program, or that Greene was ever vaccinated against COVID. (*See generally* R. 1).[3]

Plaintiff Vaughan is a former employee of Progressive who paid the tobacco surcharge in connection with the health insurance offered through Progressive. (R. 1, PageID# 3, ¶8). According to the Complaint, "any employee who used tobacco products was required to identify themselves as tobacco users and denied a non-tobacco use supplement. The supplement of roughly $15.00 per pay period totaled roughly $390.00 annually. In addition, tobacco users were charged higher amounts for

---

[2]  Defendant points to language in the Plan, quoted in the Complaint, that suggests legal spouses and children under the age of twenty-six (subject to certain exceptions) are eligible to participate in the Plan, but that the non-tobacco discount is only offered to *employees* and, therefore, only employees are "participants." (R. 1, PageID# 7, ¶25; R. 13, PageID# 73, n. 1).

[3]  Based on these allegations, or lack thereof, Defendant's take the position that these Plaintiffs lack standing to seek reimbursement for individuals who stopped smoking or who became vaccinated at some point during 2022. (R. 13, PageID# 74).

optional life insurance. Throughout his employment at Progressive, Mr. Vaughn was effectively charged for his tobacco use." *Id*. at ¶17. The Complaint alleges that Progressive deposits the tobacco surcharges into its own accounts, and that Defendant thereby has dealt with assets of the Plan in its own interests, in violation of ERISA.

## II.      Applicable Standards

**A.      Standard of Review**

### 1.        Fed. R. Civ. P. 12(b)(6)

As the Supreme Court made clear, "to survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient fact[s], accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court faced with a Rule 12(b)(6) motion "must consider the complaint in its entirety," construing all factual allegations in a light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Consequently, a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 678. This "plausibility standard is not akin to a 'probability requirement,'" but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 2.        Fed. R. Civ. P. 12(b)(1*)*

By including an argument for dismissal under Rule 12(b)(1), Defendant also challenges the Court's subject-matter jurisdiction. Unlike state trial courts, district courts do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474

(6th Cir. 2008) (*per curiam*). Instead, federal courts have only the authority to decide cases that the U.S. Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge jurisdiction based on the four corners of a complaint. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884-85 (N.D. Ohio 2010) (Lioi, J.) (citing *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994)). Factual attacks use extrinsic evidence to support dismissal. *Id.* at 885 (citing *Ohio Hosp. Ass'n v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio. 1997) (O'Malley, J.)). In either instance, when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996).

### III.    Analysis

**A.     Counts One through Four: Claims for Unlawful Imposition of a Discriminatory Tobacco and Vaccine Surcharge**

Plaintiffs claim that Progressive's tobacco and COVID vaccine wellness programs violate ERISA's antidiscrimination provision, codified in 29 U.S.C. § 1182(b)(1), because they allegedly do not satisfy the criteria for a wellness program. (R. 1, PageID# 4, ¶¶15-17). Generally, the Complaint identifies two alleged statutory shortcomings in the wellness programs. First, they allege that ERISA requires that Plan participants receive the "full reward" once they meet the alternative standard, which they construe as avoiding the tobacco and vaccine surcharges for the full plan year. (R. 1, PageID# 6-10). In other words, they allege the lack of a retroactive refund of the surcharges render

the wellness programs non-compliant with ERISA. *Id*. Second, Plaintiffs allege that the Plan

materials failed to comply with ERISA's notice requirements regarding the availability of reasonable

alternative standards for the reward/removal of the surcharge. (R. 1, PageID# 10-11). Therefore,

Plaintiffs assert that the Plan's wellness programs do not meet statutory requirements and, therefore,

impermissibly discriminates against Plaintiffs and others similarly situated.

Defendant Progressive disagrees with the proposition that its wellness programs, related to

either tobacco cessation or the COVID vaccine, failed to comply with statutory standards. (*See

generally* R. 13 & 16). Defendants challenge Plaintiffs' claim that language in the preamble to the

DOL's regulations requires the Plan to *reimburse* all higher premiums paid during a calendar year.

(R. 13, PageID# 74).[4] Defendant contends such a requirement appears nowhere in the ERISA statute

itself, and is tantamount to rewriting the statute. *Id*. at PageID# 75. Defendant further asserts that it

fully complied with ERISA's notice requirements, and avers the Plan's language tracks samples of

acceptable language from DOL's sample disclosure. (R. 13, PageID# 89; R. 16, PageID# 212). The

Court addresses each of these arguments but in reverse order.

### 1.  Notice of Reasonable Alternative Standard

Plaintiffs claim that the Plan failed to comply with ERISA's notice requirements regarding

the availability of a "reasonable alternative standard" to either the tobacco cessation program or the

vaccination program. (R. 1, PageID# 10-11). Plaintiffs maintain that DOL "regulations require plans

and issuers to 'disclose *in all plan materials* describing the terms of an outcome-based wellness

program, and in any disclosure that an individual did not satisfy an initial outcome-based standard,

---

[4]  The Court agrees with Defendant that Plaintiff's construction would require a Plan administrator to reimburse all higher premiums paid during a calendar year even if a participant stops smoking or becomes vaccinated on the very last day of the year, a concept that does not appear in any actual statute cited by Plaintiffs. (R. 13, PageID# 74-75).

9

the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." (R. 1, PageID# 10, ¶33, *citing* 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added)). The Complaint asserts that "[u]pon information and belief, Defendant does not include adequate notification of the surcharges and the corresponding reasonable alternative standards in all Plan materials" but concedes that "certain materials mention the vaccine surcharge" but do not mention a reasonable alternative standard for the vaccination program or tobacco cessation program. *Id*. at ¶34. Thus, it is Plaintiff's position that Defendant's failure to provide adequate notice deprived them of the opportunity to avoid or reduce the tobacco and vaccine surcharges. *Id*. at ¶¶3436.

The Complaint's assertion that the Plan does not provide adequate notice is not a factual allegation but a legal conclusion. Conversely, Defendant points to the following language in the SPD as evidence of legally adequate notice:

> ***Non-tobacco Use Discount***
> The Progressive medical plan includes a biweekly discount for not using tobacco. You are considered a tobacco user if you habitually/regularly use tobacco in any form, including, but not limited to: cigarettes (including electronic cigarettes/vaping), pipes, cigars, chewing tobacco and snuff. Certification of tobacco use status is made when making your benefits elections. If you quit tobacco use at any point during the year, you must remain tobacco-free for twelve months to be considered a non-tobacco user. At that time, you will become eligible to receive a biweekly discount.
>
> ***COVID-19 Unvaccinated Surcharge***
> The Progressive medical plan includes a biweekly premium surcharge for those who are not fully vaccinated (per current CDC guidelines) against COVID-19 (subject to certain medical or religious exemptions).
>
> ***Legal Notice Regarding Wellness Programs***
> We are committed to helping you achieve your best health. Rewards for participating in our wellness program are available to all employees. If you think you might be

> unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same discount by different means. Contact the HR Service Center at 800-692-4772 and we will work with you (and, if you wish, your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

R. 13, PageID# 89 (citing R. 13-1. PageID# 111, SPD at 13). Progressive asserts that the Plan's description of the wellness program is substantially similar to the DOL's sample notice language, including by referencing the option of working with a participant's doctor to find an appropriate wellness program. (R. 13, PageID# 89, citing 29 C.F.R. § 2590.702(F)(6)).

The Court agrees with Progressive that the above "Legal Notice" in the SPD complies with the statutory and regulatory notice requirements *as a matter of law*. Specifically, the Court agrees that the description of the wellness program substantively matches the sample language—nearly verbatim—provided by the DOL in 29 C.F.R. § 2590.702(f)(6) (quoted above in Section I - A). Therefore, Plaintiff's conclusory allegation — that the Plan does not include "adequate notification" under the law — is untenable.

Progressive further takes issue with the Complaint's allegation that the Plan fails to adequately disclose information regarding a reasonable alternative standard. Progressive asserts that the disclosures in the Plan are sufficient because they do *not* describe the terms of the wellness program and, therefore, are *not* required to discuss the terms of the reasonable alternative standard. (R. 16, PageID# 225). Indeed, 42 U.S.C. § 300gg-4(j)(3)(E) explicitly states that "The plan or issuer involved shall disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise applicable standard) required under subparagraph (D). **If plan materials disclose that such a program is available, without describing its terms, the disclosure under this subparagraph**

11

**shall not be required**." (Emphasis added).[5]  While Plaintiffs take issue with Defendant's argument that ERISA does not require disclosure of a compliant alternative standard, and assert it is incorrect, Plaintiffs fail to address the unambiguous statutory and regulatory language. That language confirms that disclosure of the terms of alternative programs is not required when the plan materials disclose the availability of a wellness program without describing its terms, as is the case herein.

The Complaint alleges, based on information and belief, that *other* plan materials do not adequately identify the availability of a reasonable alternative standard (R. 1, ¶35) and Plaintiffs argue that "Defendant cannot selectively disclose this information in one document [the SPD] while omitting it from others." (R. 14, PageID# 196). "While pleading on information and belief cannot insulate a plaintiff at the 12(b)(6) stage," *Mod. Holdings, LLC v. Corning Inc.*, 2015 WL 1481457, at *4 (E.D. Ky. Mar. 31, 2015), *Iqbal* did not render pleading on information and belief entirely ineffectual. *See, e.g., Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) "The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant...." *Id.*; *see also In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true.")

In *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013), the Sixth Circuit affirmed that a complaint lacked plausible factual allegations where an individual alleged that he suffered ethnic origin discrimination and that, "upon information and belief," other similarly situated borrowers were treated more favorably. The Sixth Circuit explained that "[t]hese

---

[5] *See also* 29 C.F.R. § 2590.702(f)(4)(v) ("If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required.")

are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency…. the plaintiffs have not identified any similarly situated individuals whom *Flagstar* treated better. They have merely alleged their 'belief' that such people exist. These 'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *Id*. Similarly, Plaintiffs' allegation that plan materials that run afoul of ERISA's disclosure requirements must exist, is a naked assertion devoid of fact. This is not a case where the documents are peculiarly within the possession and control of Progressive, as the other germane plan materials, if they exist, would not be Progressive's internal documents but rather documents that are disseminated to the public or at least to potential plan participants. Plaintiffs' inability to identify a single such document reveals their pleading to be little more than speculation.

A recent decision confronting nearly identical facts, found that Plaintiffs' allegation—that other, unidentified plan materials did not uniformly contain the required notice—was "too vague to state a claim …." *Noel v. Pepsico, Inc. & Pepsico Admin. Comm.*, No. 24-CV-7516 (CS), 2026 U.S. Dist. LEXIS 41586, at **39-40 (S.D.N.Y. Feb. 27, 2026). There, the court aptly determined "the problem … is that [plaintiff] has not identified any communication that did not provide such notice. And there does not appear to be any reason that Plaintiff could not have examined employee-facing documents such as 'enrollment guides, benefits summaries, and online portals'". *Id*.

In sum, the Court finds that the Plan includes the mandated notice requirements under 29 C.F.R. § 2590.702(f)(4)(v) and 42 U.S.C. § 300gg-4(j)(3)(E) as a matter of law. Therefore, Plaintiff's argument, that adequate notice of the wellness programs is lacking, is not well taken.

### 2. Failure to Provide the "Full Reward"

Plaintiffs also allege that the tobacco surcharge program does not provide for retroactive

reimbursement. (R. 1, ¶25). The Plan states that "[i]f you quit tobacco use at any point during the year, you must remain tobacco-free for twelve months to be considered a non-tobacco user. At that time, you will become eligible to receive a biweekly discount." (R. 13-1, PageID# 111). Thus, Plaintiffs' contention that an individual who quit tobacco use would not be eligible for a retroactive reimbursement is accurate—a point Defendant does not appear to dispute. According to Plaintiffs, failure to provide retroactive reimbursement and the need to stay tobacco-free for 12 months directly violates ERISA's requirement to provide the "full reward" to all similarly situated individuals. *Id*. ¶¶21-32. The same assertions are raised with respect to the vaccination program—that an "employee who vaccinated part way through the year would not be eligible to avoid the surcharges he or she had already paid prior to submitting documentation" and would, thus be deprived of a "full reward." (R. 1, PageID# 9, ¶30).

Defendant argues that such claims fail as a matter of law because "Plaintiffs' retroactive reimbursement argument cannot be squared with the terms of the statute." (R. 13, PageID# 86) ("nothing in ERISA's statutory language requires the Plan to reward Participants *retroactively* for periods when they were non-adherent to a wellness program.") (emphasis added).

The dispositive issue here is which side is correct as to the proper meaning of the term "full reward," and resolution of this issue does not involve any weighing of facts but is rather an issue of statutory interpretation that can be resolved as a matter of law. If Defendant's position prevails—that a "full reward" does not require retroactive reimbursement to Plan participants who complete the wellness program (or a reasonable alternative standard), then it is irrelevant whether Defendant did, in fact, provide retroactive reimbursement to participants.

Under 42 U.S.C. § 300gg-4(j)(3)(D), "[t]he full reward under the wellness program shall be made available to all similarly situated individuals," but the term "full reward" is not defined.

14

Likewise, 29 C.F.R. § 2590.702(f)(4)(iv) uses similar terminology without a clear definition. "Neither ERISA nor the regulations implemented pursuant to it clearly define the term full reward." *Noel*, 2026 U.S. Dist. LEXIS 41586, at *30 (internal quotation marks and citations omitted). Plaintiffs contend that full reward requires retroactive reimbursement of surcharges for the entire calendar year. (R. 14, PageID# 183).

Plaintiffs argue that Congress delegated authority to the DOL to define and implement ERISA's anti-discrimination provisions, which they assert made clear that "full reward" means the same reward as non-smokers enjoy. (R. 14, PageID# 194). Plaintiffs argue that Courts must defer to agency interpretations unless they are clearly erroneous. *Id*. (*citing Auer v. Robbins*, 519 U.S. 452 (1997); *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)). Under *Auer*, a court must defer to an agency's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." 519 U.S. at 461. Plaintiffs' argument relies on the preamble to the DOL's ERISA regulations, as have other plaintiffs who have filed similar lawsuits. The preamble states the following:

> [W]hile an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)

78 Fed. Reg. 33158, 33163. Plaintiffs, however, concede that "it is true that a preamble is not legally binding," but posit that courts routinely look to preamble language as "persuasive authority when it clarifies an agency's interpretation of its own regulations." (R. 14, PageID# 195). For further support, Plaintiffs cite a DOL enforcement action in *Sec'y of Labor v. Macy's, Inc*., No. 1:17-CV-541, 2021 U.S. Dist. LEXIS 221603, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021). (R. 14, PageID#

15

193).[6]

An identical argument was recently address by the United States District Court for the

District of Rhode Island, which rejected Plaintiffs' line of argument as follows:

> According to [the plaintiff], this case "is a textbook example" of where *Auer* deference should apply. (ECF No. 13 at 28.) Other courts that have considered similar claims addressing the meaning of "full reward" have found *Auer* deference to mandate acceptance of the preamble language as controlling. *See Mehlberg v. Compass Grp. USA, Inc.*, No. 24-CV-04179-SRB, 2025 U.S. Dist. LEXIS 84589, 2025 WL 1260700, at *5 (W.D. Mo. Apr. 15, 2025) (citing *Auer*, 519 U.S. at 461 1997); *Bokma v. Performance Food Group, Inc.*, 783 F. Supp. 3d 882, 906 (E.D. Va. 2025) (finding *Mehlberg* persuasive regarding the applicability of *Auer* deference to substantively similar tobacco surcharge claims).
>
> However, another court confronted with similar claims noted, in dicta, that *Mehlberg* and *Bokma* did not address a problem with applying *Auer* deference in this case: the "anti-parroting doctrine." *See Buescher v. N. Am. Lighting, Inc.*, No. 24-CV-2076, 2025 U.S. Dist. LEXIS 135992, 2025 WL 1927503, at *26 (C.D. Ill. June 30, 2025). Under *Gonzalez v. Oregon*, a court need not defer to an agency's interpretation of a parroting regulation because "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." 546 U.S. 243, 257, 126 S. Ct. 904, 163 L. Ed. 2d 748 (2006). While *Bokma* and *Mehlberg* deferred to the preamble in deciding when the disclosure requirements were triggered, those courts do not appear to have considered whether the anti-parroting doctrine might be implicated. *See Bokma* 783 F. Supp. 3d at 906-07; *Mehlberg*, 2025 U.S. Dist. LEXIS 84589, 2025 WL 1260700, at *5-6.
>
> The First Circuit confronted a similar issue involving *Auer* deference and the anti-parroting doctrine in *Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund*, 724 F.3d 129 (1st Cir. 2013). In that case, the federal Pension Benefit Guaranty Corporation ("PBGC") claimed that its interpretation—provided in an appeals letter that was not subject to notice and comment—should be afforded *Auer* deference regarding its definition of the term "trade or business" as provided in 29 C.F.R. §§ 4001.2, 4001.3. *Id*. at 140. The court disagreed for two reasons, one of which was that the regulations being interpreted "made no effort to define 'trades or businesses' and merely refer to Treasury regulations, which . . . also do not define the phrase." *Id*. at 141 (internal citation omitted). As those regulations were found to simply parrot the phrase "trade or business" contained in 29 U.S.C. § 1301(b)(1), the court found *Auer* deference

---

[6] In *Macy*'s, the DOL argued that the plain language of the regulations requires reimbursement of a tobacco surcharge for the entire plan year. 2021 WL 5359769, at *13.

16

inapplicable under the anti-parroting doctrine. *Id*.

Here, as identified in *Buescher*, 29 C.F.R. § 2590.702(f)(4)(iv) simply repeats the statutory "full reward" requirement found in 42 U.S.C. § 300gg-4(j)(3)(D). Bally's Management thus argues that the anti-parroting doctrine applies and precludes mandatory deference to the Departments' interpretation of the regulation. (ECF No. 11 at 25.) While [the plaintiff] disagrees with Bally's argument, contending it "ignores how administrative law actually works," she fails to address how *Gonzalez v. Oregon* and *Sun Capital Partners* are inapplicable. *See* ECF No. 13.

Another recent tobacco surcharge case further complicates this issue. *See Waggoner v. The Carle Found*., Case No. 24-CV-2217, ECF No. 27 (C.D. Ill. Sept. 16, 2025). In *Waggoner*, when faced with the challenge to *Bokma* and *Mehlberg* presented by *Buescher*, the court noted the plaintiff's argument that the phrase "full reward" in fact originates from the Department of Labor's 2006 wellness program regulations, which used language that was adopted "almost verbatim" into ERISA through the Affordable Care Act. *Id*. at *45-46; *see* Nondiscrimination and Wellness Programs in Health Coverage in the Group Market, 71 Fed. Reg. 75014 (Dec. 13, 2006). Thus, the plaintiffs argued, the court ought to defer to the Department of Labor's interpretation of its own regulation that was subsequently adopted by Congress. *Waggoner*, at *45-46. *Waggoner* did not, however, decide whether this argument warranted *Auer* deference, as it found that even were it not required to it would still follow the Departments' interpretation. [FN 5]

> [FN 5] The court in *Waggoner* also noted the potential impact of *Loper Bright*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024), on *Auer* deference, but declined to definitively rule on this issue. *See Waggoner*, at *46. *Mehlberg* found *Auer* deference still applicable, *see* 2025 U.S. Dist. LEXIS 84589, WL 1260700, at *5, as did *Buescher*, which noted that permitting deference to an agency's interpretation of its own parroting regulation, when deference to the regulation's interpretation of the underlying statute would itself be impermissible, "would seem an improper end run around *Loper Bright*." 2025 U.S. Dist. LEXIS 135992, 2025 WL 1927503, at *26. *Bokma* declined to affirmatively rule on the interplay of *Auer* and *Loper Bright*. *See* 783 F. Supp. 3d at 897. As no compelling authority has yet ruled on this issue, this Court will continue to apply both *Auer* and *Gonzalez v. Oregon*.

After weighing the arguments on either side of this question, the Court agrees with Bally's that, under *Gonzalez v. Oregon* and *Sun Capital Partners*, *Auer* deference is not required here. While the Departments' interpretation, as expressed in its preamble and in its arguments in *Macy's*, is a reasonable interpretation of an ambiguous regulatory phrase ("full reward"), that phrase is clearly parroted from the underlying statutory text, 42 U.S.C. § 300gg-4(j)(3)(D). And although that statute may itself (as identified in *Waggoner*) have incorporated language from preexisting Department of

17

> Labor regulations, [plaintiff] has presented no authority suggesting the Court must stretch *Auer* deference through 42 U.S.C. § 300gg-4(j)(3)(D) to its regulatory predecessor. The Court, as such, declines to do so.

*Williams v. Bally's Mgmt. Grp., LLC*, 2025 WL 30787472025 U.S. Dist. LEXIS 217102 at **24-27 (D.R.I. Nov. 4, 2025). The *Noel* court echoed that same conclusion, finding that plaintiff's *Auer* deference "fails to grapple with the fact that the regulation at issue merely repeats the 'full reward' language from the statute verbatim…. [and that] [u]nder the so-called 'anti-parroting doctrine,' 'a court need not defer to an agency's interpretation of a parroting regulation because an agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." 2026 U.S. Dist. LEXIS 41586, at *32.

This Court agrees with *Williams*, *Wilson*, and *Noel*, and also declines to ascribe *Auer* deference to the DOL's interpretation of "full reward," as set forth in its preamble and its litigation position in *Macy's*. Therefore, this Court must interpret the meaning of "full reward" as used in the statute itself. While *Bokma* and *Mehlberg* involved similar reward programs to the present case, those courts found *Auer* deference applied, and, therefore, their analysis does not aid the Court in its resolution as to the correct interpretation of the "full reward" language.

As for the proper meaning of full reward under the statute, the Court agrees with *Noel* and *Williams* that the statute does not say anything about a retroactive reward and there is no reason to imbue the statute with such a requirement. The *Noel* court aptly stated:

> As a threshold matter, the Court is not convinced that the 'full reward' requirement entitles participants who complete a reasonable alternative standard to an amount reflective of the entire Plan year. If an employer creates a program where the reward is the absence of a surcharge, and the surcharge is indeed fully removed once participants complete the reasonable alternative standard, it would be logical to conclude that the employer has thus provided the full reward - *i.e.*, the complete removal of the surcharge. Nor does this reading of the statute render

18

> the word 'full' superfluous, as Plaintiff argues…. For example, consider a program that removed a surcharge entirely for participants who indicated that they did not smoke, but provided that smokers were entitled to a reduced surcharge for completing a smoking cessation program. It is clear that such a program would not offer the 'full reward.'

*Noel*, 2026 U.S. Dist. LEXIS 41586, at *30-31. The Court further agrees with *Williams*' explanation that:

> Whether an individual who receives only a prospective "absence of a surcharge" halfway through the plan year obtains the same reward as an individual who did not have to pay the surcharge from the beginning of the year is a matter of perspective: while on the one hand the first individual received a different reward because that individual had to pay the tobacco surcharge up until the time they completed the program, on the other hand both receive the same reward of not being prospectively charged a tobacco surcharge. Given this statutory ambiguity, the Court declines to impose a retroactive reimbursement requirement that is not clearly defined in the statute on Bally's Management.

*Williams*, 2025 U.S. Dist. LEXIS 217102, at *30.

The Court is aware that other cases have come to a different conclusion. As referenced, *supra*, Plaintiffs have cited a recent decision from the Western District of Texas, *Wilson v. Whole Food Market, Inc.*, 2026 WL 196517 (W.D. Texas, Jan. 20, 2026). (R. 30). Even that decision, however, agreed that *Auer* deference was not warranted, as to do so would be "an improper end run around *Loper Bright*…" *Id*. at *9 (*citing Buesche*r, 791 F. Supp. 3d at 906). Ultimately, that court determined that "[w]ere the Court to interpret 'full reward' as Defendants suggest—namely, that the 'full reward' entails only the absence of a surcharge on a going forward basis—the word 'full' would not be given effect. Put differently, if all that ERISA and its implementing regulations require is that participants who complete the program stop paying the surcharge in future pay periods, the statute and regulations could have accomplished that objective merely by providing that the "reward" must be made available." *Id*. at *10. While the Court appreciates the reasoning behind this analysis, it does not agree with it, as it runs contrary to the plain language of the statute. The full reward is still

19

obtained going forward, and the term full was necessary to clarify that an individual who stopped smoking, obtained the COVID vaccine, or completed a reasonable alternative would not be subjected to a *reduced* reward. If Congress intended the statute to provide the reward retroactive for the entire plan year, then it could have easily stated as much. Consequently, the statute reasonably reads as applying the full reward, not a reduced reward, to participants when they satisfy the wellness program or the reasonable alternative standard.

The Court finds that, as a matter of law, neither 42 U.S.C. § 300gg-4(j)(3)(A) nor 29 C.F.R. § 2590.702(f)(4)(iv) require Progressive to provide retroactive reimbursements of the tobacco and vaccine surcharges.

**B.      Count Five: Breach of Fiduciary Duty in Violation of ERISA**

Defendant also seeks dismissal of Count Five, arguing Plaintiffs' breach of fiduciary duty cause of action in Count Five fails to state a claim. Defendant offers three arguments in favor of dismissal. (R. 13, PageID# 90). Specifically, Defendants allege that the Complaint fails to allege an act that involves fiduciary conduct, nor does it allege a transaction that is prohibited by 29 U.S.C. § 1106. *Id*. Finally, Defendants argue that Plaintiffs have failed to plausibly allege a loss to the plan. (R. 13., PageID# 91-92).

**1.   Lack of Fiduciary Conduct**

"In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S. Ct. 2143, 2152-53 (2000); *accord Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2021 WL 5359769, at *18 (S.D. Ohio Nov. 17, 2021) ("When the employer alters the terms of a

20

plan, the employer is acting as a settlor rather than a fiduciary.")

The Court agrees with Defendant that it acted as a settlor when it designed the wellness programs that Plaintiffs now challenge. "ERISA's fiduciary duty requirement simply is not implicated where [a defendant], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan…." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444, 119 S. Ct. 755, 763, 142 L. Ed. 2d 881 (1999).

The Complaint's allegations revolve around the contention that Defendant's Plan, specifically the wellness programs, failed to comply with ERISA. The Court has determined that Plaintiffs have failed to state an actionable claim, as the Plan does not violate the provisions identified by Plaintiffs. In *Macy's*, the court determined that "the Secretary's only apparent allegation about implementation is that Macy's implemented a discriminatory wellness program in accordance with the impermissibly discriminatory terms it established when it created the program. *This is not enough to make Macy's a fiduciary rather than a settlor* with respect to the conduct of which the Secretary complains." *Macy's, Inc.*, 2021 WL 5359769, at *18 (emphasis added). The *Noel* court also agreed that claims nearly identical to Plaintiffs' herein failed to state a claim for breach of fiduciary duty. 2026 U.S. Dist. LEXIS 41586, at *42 (S.D.N.Y. Feb. 27, 2026) ("Because '[t]here can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms,' … these allegations are deficient.") (citations omitted). "[S]imply administering a plan according to its terms, when the terms themselves are the basis for claimed breach of fiduciary duty, does not implicate the discretionary authority or control over plan administration or management, exercise of authority or control over management or disposition of the plan's assets, dispensing of investment advice, or benefit determinations that normally constitutes a fiduciary act under ERISA." *Waggoner*, No. 24-CV-2217, at 64-65. *See also Laurent v.*

21

*PricewaterhouseCoopers LLP*, No. 06-CV-2280 (JPO), 2018 WL 502239, at *3 (S.D.N.Y. Jan. 19, 2018) (disagreeing "with the notion that ERISA imposes a general fiduciary duty on a plan administrator to comply with each and every provision in the statute").

Therefore, Count Five fails to state a claim.

### 2.  Lack of a Prohibited Transaction

Plaintiffs argue that "where a fiduciary uses plan funds 'for its own purposes,' it violates both of these ERISA duties [breach of fiduciary duty and prohibited transaction]"). (R. 14, PageID# 198, n. 31, *citing Patterson v. United Healthcare Ins. Co.*, 76 F.4th 487, 496 (6th Cir. 2023)). Plaintiff's argument, however, assumes that Defendant was acting as a fiduciary in its role, and, as discussed above, it was merely acting as a settlor in designing and implementing the plan. ERISA's prohibited transaction provisions in 29 U.S.C. § 1106(a), (b) applies only to *fiduciaries*.

Again, this Court's decision is consistent with *Noel*, where the plaintiff accused the defendants therein of "robbing the Plan of Plan assets." But the court found that plaintiff's grievance was simply "with the collection of the surcharge from the participants, which is a feature of the structure of the Plan and therefore implicates a settlor rather than fiduciary function." *Noel*, 2026 U.S. Dist. LEXIS 41586, at *47.

Finally, the Court agrees with Defendant that ERISA plainly permits the wellness programs involving the collection of premiums and surcharges, even if Plaintiffs challenge these two particular programs as unlawful. To characterize the mere act of collecting premiums and/or surcharges as an unlawful transaction would essentially nullify even ERISA compliant wellness programs.

22

**B.      Standing**

Standing has three components: "The plaintiff must have (1) suffered an injury in fact,[7] (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 360–61 (6th Cir. 2021) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these standing elements. *Id*. To meet this burden, the plaintiff must "clearly allege facts demonstrating" each element. *Id*. (*quoting Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("Article III standing requires a concrete injury even in the context of a statutory violation.").

In *Parker v. Tenneco, Inc.*, 114 F.4th 786, 797 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1060, 220 L. Ed. 2d 386 (2025), the Sixth Circuit acknowledged that ERISA does "not provide a remedy for individual injuries distinct from plan injuries," (*citing LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008)). "While *LaRue* acknowledged the possibility of a participant bringing a claim under § 502(a)(2) regarding her individual plan account, *LaRue* still affirmed the principle in *Russell* that § 502(a)(2) provides a remedy for 'plan injuries,' not individual ones." *Parker*, 114 F.4th at 795.

---

[7] "To establish Article III standing, a plaintiff must show … an 'injury in fact,' which must be 'concrete and particularized' and 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (*quoting Lujan*, 504 U.S. at 560).

23

Defendant argues that Plaintiffs herein lack standing because they do not allege that the purported violations of the regulation caused them an Article III injury in fact. (R. 13, PageID# 79). Indeed, Defendant contends Plaintiffs allege "the tobacco-free discount violates ERISA because it does not provide retroactive reimbursement[,]" but Defendant further highlights that Vaughn does not allege that he qualified for the discount either by stopping tobacco use or by participating in a wellness program. (R. 13, PageID# 80). Defendant further points out that neither Plaintiff alleges they would have availed themselves of some reasonable alternative. (R. 13, PageID# 83). Finally, Defendant argues that even if a retroactive reward or reimbursement were required, Vaughn would not receive any relief because he was not entitled to one as he never stopped smoking or inquired about an alternative. Therefore, Defendant argues standing is non-existent. (R. 13, PageID# 80). Defendant also points out that Vaughn does not allege that he contacted the Human Resources to "find a wellness program with the same reward that is right for you in light of your health status[.]" (R. 13, PageID# 80, citing R. 13-1, SPD at 12). Further, Defendant argues there is no allegation that he completed such a program, and was denied retroactive reimbursement. *Id*.

Plaintiff counters that Vaughan has standing because he is challenging the legality of the wellness program. (R. 14, PageID# 186). Plaintiff appears to concede that he is not arguing he was improperly denied benefits under the program, or that he ever sought out an alternative standard. Instead, Plaintiff contends that Defendant's Plan is illegal because: (1) it failed to offer an alternative standard for smokers, (2) it did not provide a mechanism, to offer the "full reward," and (3) it failed to issue the required notice. *Id*. Each of these failures, Plaintiffs allege, violates ERISA's regulatory framework. *Id*. This, of course, is not a factual allegation but a legal conclusion.

With respect to Counts One through Five, the Court declines to address the issue of standing as these counts fail to state a claim, as discussed above. In the interests of judicial economy, the Court

24

finds resolution of this issue to be unnecessary.[8] With respect to Count Five, the Court does not construe the motion to dismiss as raising a clear and unambiguous claim that Plaintiffs lack standing to raise a breach of fiduciary duty claim. As such, the Court declines to issue an advisory opinion on the issue.

## C.      Administrative Exhaustion

The Court also declines to address Defendant's administration exhaustion argument in the interests of judicial economy, as the Court has determined the Complaint fails to state a claim.[9]

## IV.     Conclusion

Based on the foregoing, the Complaint fails to state an actionable claim. Therefore, the Court GRANTS Defendant's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

IT IS SO ORDERED.

*David A. Ruiz*
David A. Ruiz
United States District Judge

Date: March 20, 2026

---

[8] The Court notes that the majority of cases that have addressed the issue have found that plaintiffs who pay a surcharge with respect to an allegedly illegal wellness program have standing. *See Noel v. Pepsico, Inc. & Pepsico Admin. Comm.*, No. 24-CV-7516 (CS), 2026 U.S. Dist. LEXIS 41586, at *20-21 (S.D.N.Y. Feb. 27, 2026) (collecting cases).

[9] The Court does note that in *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017), the Sixth Circuit Court of Appeals held that "(1) there is no exhaustion requirement for ERISA claims alleging statutory, rather than plan-based, violations[.]"

25